## THE UNION RENDERING COMPANY
### *v.*
### ANNIE KREFT.

*Filed at Ottawa January 20, 1896.*

APPEALS AND ERRORS—*exclusion of facts subsequently proved will not reverse.*   Exclusion of evidence of facts proved on re-examination of the same witness and by other witnesses is not cause for reversal.

*Union Rendering Co.* v. *Kreft,* 57 Ill. App. 243, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. RICHARD W. CLIFFORD, Judge, presiding.

The following statement of the case is taken from the opinion of the Appellate Court:

"This is an appeal from a judgment recovered in an action of trespass on the case, brought by appellee, a minor, by her next friend, against the appellant.   The appellant is an Illinois corporation, engaged in the business of rendering the carcasses of dead animals, and in the prosecution of its business employs teams and men to gather up the bodies of animals that are found dead on the streets and in other places in Chicago.   For such purpose low wagons, especially constructed, with skids attached to the rear, are used, and up the inclined plane

formed by the skids reaching from the ground to the platform bottom of the wagon the carcasses are hauled. The team employed in drawing the wagon does the loading, by being detached from the wagon and hitched to one end of a chain which passes lengthwise over the wagon, and the other end of which is fastened to the neck of the carcass. Then, the wagon remaining stationary, the team is started ahead and draws the carcass forward up the skids and upon the wagon platform. But one man accompanies the team and wagon, and during the act of loading this man stations himself near the carcass, for the purpose of guiding it, and starts or stops the team by word of mouth, leaving the reins on the ground at the other end of the wagon where the team is. In this particular instance the carcass was either very heavy or caught against something, and the team, instead of pulling straight ahead, as it should have done, sheered away sidewise, twice, towards the middle of the street, and turned as if to go back towards the wagon. On both of these occasions the driver, who stood behind the wagon where the carcass was, went forward to the team and jerked and whipped the team back into its proper position, and then, leaving the reins on the ground, returned to the rear of the wagon, from which position he again started the team by word. Starting the team for the third time in this manner, the team, being again unable or unwilling to pull straight ahead, suddenly sheered off to and upon the sidewalk, which was about fifteen feet from the team before it turned, and came down along it till nearly opposite to where the driver was standing, who headed them off as they approached. Standing upon the sidewalk at the time were a large number of people, among whom was the appellee, a girl five years of age, and she was run upon by the team and received severe injuries.

"Special findings were submitted to the jury at the request of defendant (appellant), and they found that the

driver of the team was negligent and that the child was permanently injured, and returned a verdict in favor of the plaintiff for $5000. A *remittitur* of $2500 was entered by the plaintiff, and judgment was entered for $2500.

"It was shown by the defendant that the method pursued in doing the particular business out of which the injury arose was the customary way in which the business of appellant had been carried on for a number of years, and that this was the first time it had resulted in an injury to bystanders; that the mules comprising the team in question were well broken to the business, and had been used in the business about a year, and were taught to start and stop by word instead of by rein, and that the appliances employed generally, and on this particular occasion, were of the customary and approved kind."

The judgment was affirmed by the Appellate Court. The defendant to said judgment appealed to this court.

COY & BROCKWAY, (IRUS COY, of counsel,) for appellant.

MERRITT W. PINCKNEY, and WILLIAM H. TATGE, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

As all questions of fact, including the question raised as to the alleged excessiveness of the amount of damages for which judgment was rendered, have been finally settled against appellant by the judgment of the Appellate Court, and as no point is made on the instructions, nothing remains to be considered by this court except the alleged error of the trial court in refusing to permit the witness Doherty, who was the driver of the team of mules when they injured appellee, to answer certain questions intended to elicit testimony that the mules were gentle. There was no allegation in the declaration that the mules were vicious or ungentle, nor was any negligence of appellant in the driving or use of unsafe animals at the time

and place of the injury counted on, but the *gravamen* of the charge in the declaration was that the defendant, by its said servant, so carelessly, improperly and negligently drove and managed them, that by and through such carelessness and negligence the said team of mules ran against and struck the plaintiff and caused the injury. No attempt was made on the part of the plaintiff to prove that the mules ran away or attempted to do so, or that they were vicious or ungentle.

It becomes unimportant, however, in this case to discuss the question whether or not, under such declaration, with no proof adduced by the plaintiff of a lack of ordinary gentleness of the mules, it would be error to exclude affirmative proof of the character of the mules for gentleness, for the reason that, although the particular questions mentioned were not permitted to be answered, yet the fact was sufficiently proved on re-examination of the same witness, and the defendant was not prejudiced. He testified that he had "driven these mules in the same way about a year. They were mules driven every day without lines, and I have always had my mules so that I could drive them without lines. I always used to have them broke in to mind just as soon as I spoke to them. These were broke in just the same way. They never would pull a foot over after I hollered at them." Another witness, the manager of the defendant company, testified: "I use mules on account of their being easier taught and better than horses to use for that business, for they will go by word after they are worked about three months. They can be used without handling the lines or jerking on them. You can tell them to get up when they are hitched to a horse, and they will pull. They will pull every time you tell them to. They are less liable to get away than a horse would be, and they are easier broken."

There being no error in the record the judgment of the Appellate Court is affirmed.     *Judgment affirmed.*